IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| STATE OF LOUISIANA, et al., | * | |
| | * | Hon. James D. Cain, Jr. |
| *Plaintiffs*, | * | Mag. Judge Thomas P. LeBlanc |
| | * | |
| v. | * | |
| | * | Civil No.: 2:25-cv-00691-JDC-TPL |
| NATIONAL MARINE FISHERIES | * | |
| SERVICE, et al., | * | |
| | * | |
| *Federal Defendants*. | * | |
| | * | |

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(B)**

Pursuant to Federal Rule of Civil Procedure 60(b)(5)-(6), Federal Defendants respectfully move the Court for relief from the portion of the Court's order on remedy and judgment remanding the National Marine Fisheries Service's ("NMFS") 2025 Biological Opinion ("2025 BiOp") regarding oil and gas program activities in the Gulf of America. *See* ECF 59, 60.

The Endangered Species Act ("ESA") provides that a group of cabinet level officials known as the Endangered Species Committee ("Committee") may exempt agency actions from the ESA's requirements. On March 31, 2026, the Committee granted an exemption for oil and gas program activities in the Gulf of America. Because of the exemption, the legal framework has changed entirely. The substantive and procedural requirements of the ESA no longer apply to oil and gas program activities in the Gulf of America. There is no longer a need for NMFS to provide a biological opinion with an incidental take statement to address the agencies' compliance with the ESA for prospective oil and gas activities in the Gulf. Application of the remedy order prospectively is no longer equitable, as the ESA consultation would not provide any relief to Plaintiff or serve any

legal or practical purpose. The Court should therefore modify the remedy order to remove the requirement that NMFS, within 185 days, complete a remand of the 2025 BiOp, addressing aspects of the 2025 BiOp and incidental take statement which the Court found unlawful.

## BACKGROUND

### A.     Endangered Species Act

Section 7 of the ESA requires that each federal agency "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [protected species' critical] habitat." 16 U.S.C. § 1536(a)(2). To carry out this mandate, the federal agency must consult with the U.S. Fish and Wildlife Service ("FWS") and/or NMFS whenever a proposed action may affect a listed species or its critical habitat. *Id.* § 1536(a)(2)–(3); 50 C.F.R. § 402.14(a).

Consultation can be either informal or formal. 50 C.F.R. §§ 402.13 to .14. Formal consultation culminates in the issuance of a "biological opinion," in which the consulting agency (NMFS or FWS) examines the proposed action's anticipated effects on listed species and critical habitat and opines on whether the action is likely to jeopardize the species' continued existence or adversely modify its critical habitat. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. §§ 402.02, 402.14(h). If the consulting agency issues a "jeopardy" finding, the BiOp must identify "reasonable and prudent alternatives" to the proposed action, if any exist. 50 C.F.R. § 402.14(h)(1)(iv)(A), (h)(2).

Even where the proposed action is not likely to jeopardize a species, it may cause "incidental take." *Id.* § 402.02 (defining "incidental take" as "takings that result from, but are not the purpose of, carrying out an otherwise lawful activity conducted by the Federal agency or

2

applicant"). In such cases, the consulting agency issues an incidental take statement specifying the extent of anticipated take, identifying "reasonable and prudent measures" to minimize impact, and setting forth terms and conditions for their implementation. 16 U.S.C. § 1536(b)(4); 50 C.F.R. § 402.14(i). Compliance with the incidental take statement provides a safe harbor from civil and criminal liability for incidental take. 16 U.S.C. § 1536(*o*)(2).

**B.**    **The Endangered Species Committee**

Congress recognized that there are circumstances where agency actions should be exempt from the ESA. It thus created the Committee and gave it authority to grant blanket exemptions from the ESA's requirements for any agency action. *See id.* § 1536(e), (h). The Committee consists of six permanent members: the Secretary of the Interior (who serves as chair), the Secretary of Agriculture, the Secretary of the Army, the Chairman of the Council of Economic Advisors, the Administrator of the Environmental Protection Agency, and the Administrator of the National Oceanic and Atmospheric Administration. *Id.* § 1536(e)(3)(A)–(F). The ESA provides that, "[n]otwithstanding any other provision of this chapter, the Committee shall grant an exemption for any agency action if the Secretary of [War] finds that such exemption is necessary for reasons of national security." *Id.* § 1536(j).

When the Committee grants an exemption for an agency action, that agency action is exempt from the ESA's requirements—which means that the procedural consultation requirements of ESA Section 7 and the substantive duty to avoid jeopardy and adverse modification to critical habitat no longer apply to the action, and the ESA's take prohibitions no longer apply to activity necessary to carry out the action. *See* 16 U.S.C. § 1536(a)(2), (*o*)(1).

**C.**    **The Committee's exemption for oil and gas program activities**

On March 13, 2026, the Secretary of War notified the Secretary of the Interior that he

3

found it necessary for reasons of national security to exempt from the ESA's requirements all Gulf of America oil and gas exploration and development activities associated with the Bureau of Ocean Energy Management and the Bureau of Safety and Environmental Enforcement's Outer Continental Shelf Oil and Gas Program—specifically, as relevant here, the actions reviewed in the 2025 BiOp. *See* Endangered Species Committee Order, 91 Fed. Reg. 16966, 16966 (Apr. 3, 2026). The Secretary of the Interior, as Chairman of the Committee, convened a Committee meeting on March 31, 2026. *See* Endangered Species Committee Meeting Announcement, 91 Fed. Reg. 12672 (Mar. 16, 2026). There, the Committee granted the exemption for oil and gas activities in the Gulf. *See* 91 Fed. Reg. at 16966-67. The order granting the exemption was published in the Federal Register on April 3, 2026. *See id.*

## ARGUMENT

Rule 60(b) permits a court to relieve a party from a final judgment or order for various reasons, including because "(5) applying [the judgment or order] prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(5)-(6). Federal Defendants are entitled to relief under both provisions.[1]

### A.      Rule 60(b)(5)

Rule 60(b)(5) "provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *SEC v. Novinger*, 40 F.4th 297, 307 (5th Cir. 2022). This "encompasses the traditional power of a court of equity to modify its decree in light of changed circumstances." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 441 (2004). Rule 60(b)(5) motions are committed to the discretion of the district court, *see Novinger*, 40 F.4th at 302, and

---

[1] On April 21, 2026, Federal Defendants filed a notice of appeal of the final judgment in this action. [ECF 61]. Federal Defendants, however, will be moving to dismiss the appeal.

4

courts should grant relief on a Rule 60(b)(5) motion when the moving party shows changed circumstances warrant relief, *Horne v. Flores*, 557 U.S. 433, 447 (2009). *Accord June Med. Servs. LLC v. Phillips*, 640 F. Sup. 3d 523, 535 (M.D. La. 2022).

The Fifth Circuit has explained that the clause of Rule 60(b)(5) at issue here—that "applying [the judgment or order] prospectively is no longer equitable"—requires two showings: first, that the judgment has prospective application, and second, it is no longer equitable that the judgment should so operate. *Kirksey v. City of Jackson*, 714 F.2d 42, 43 (5th Cir. 1983). Regarding the first showing, relief such as injunctions and declaratory judgments has been held to have prospective application because such remedies have an "obviously continuing" impact. *Id.* When a court order requires an agency to undertake an action by a specific deadline, the order is prospective because it requires the agency to take future action under threat of enforcement or contempt. *See Becerra v. U.S. EPA*, 978 F.3d 708, 716-17 (9th Cir. 2020) (order for Environmental Protection Agency ("EPA") to issue a federal plan by a date certain treated as an injunction with prospective effect, and granting relief based on circumstances). Regarding the second showing—equity—a court properly vacates its judgment or order where the "legal basis" "has been eliminated—and, indeed, the Court likely abuses its discretion when it doesn't." *June Med. Servs. LLC v*, 640 F. Supp. 3d at 539 (collecting cases).

Federal Defendants can show both requirements for relief under Rule 60(b)(5). First, the Court's judgment is prospective because it has an "obviously continuing" impact—a remand with specific instructions to address "the aspects of the 2025 Biological Opinion and Incidental Take Statement that the Court concluded were unlawful: the jeopardy determination for Rice's whales in its 2025 Biological Opinion, the resulting RPA, and RPMs 1 and 4 included in the Incidental Take Statement," within 185 days "consistent with the schedule, milestones, and obligations [in the

parties' submission on remand]." ECF 59; *see Kirksey*, 714 F.2d at 43. In *Becerra*, the district court entered an injunction requiring the EPA to issue a plan to implement air emissions guidelines by a date certain, after EPA missed an earlier deadline to do so. 978 F.3d at 711. Before the deadline, EPA promulgated a new rule that, as a matter of law, gave EPA an additional two years to issue its plan. *Id.* EPA sought relief from the court-ordered deadline under Rule 60(b)(5). The Ninth Circuit concluded that the order requiring EPA to issue its plan within two years was prospective because it required EPA to perform a future act—even where that future act was just "'one discrete task'" rather than a part of a continuing or ongoing injunction. *Id.* at 716-17. Like the EPA in *Becerra*, NMFS is currently required to perform a remand, with specific instructions from the Court, by a date certain. The fact that NMFS is required to perform that task by a date in the future shows that the judgment has prospective application. *See* ECF 59. Also, the court retained jurisdiction to enforce its judgment during the remand, another indication of the prospective nature of the judgment. *See id.*

Second, the equities counsel in favor of lifting the remand requirement because there is no longer any legal basis for the remand. In its memorandum ruling and remedy order, the Court found unlawful, and ordered NMFS to address on remand, the 2025 BiOp's jeopardy determination, the resulting reasonable and prudent alternative, and the reasonable and prudent measures in the incidental take statement. ECF 53, 59. The BiOp and incidental take statement address the action agencies' compliance with the ESA when authorizing Gulf oil and gas activities. *See City of Tacoma, Wash. v. FERC*, 460 F.3d 53, 75 (D.C. Cir. 2006). Yet the Committee has exempted the agency actions from the ESA. Section 7's procedural consultation requirements no longer apply to the actions, so there is no need for NMFS to give its biological opinion about the action. *See* 16 U.S.C. § 1536(a)(2). The duty to avoid jeopardy no longer applies, so the reasonable and prudent

6

alternative no longer carries any import. *See id.* And, the ESA's take prohibitions no longer apply to activities necessary to carry out the actions, so the incidental take statement is unnecessary. *See id.* § 1536(*o*)(1). The agencies' legal obligations are now controlled by the Committee's order and other applicable laws, not the 2025 BiOp. Therefore, there is no legal basis for requiring NMFS to address those issues on remand. *See also Bennett v. Spear*, 520 U.S. 154, 169-70 (1997) (explaining legal effect of a biological opinion).

When, as here, the legal landscape changes, and there is no foundation for a court's prospective order, the court should set the prospective portion of its remedy order aside. In *June Medical Services*, the court considered a Rule 60(b)(5) request to lift an injunction following a change in Supreme Court precedent and found that it was no longer equitable to maintain the injunction because the "legal foundation" for the court's order was "no longer present." 640 F. Supp. 3d at 541. The court in *Becerra* reached a similar conclusion. Citing an "unbroken line of Supreme Court cases," the Ninth Circuit held that the district court abused its discretion by not granting EPA's request to modify the injunction under Rule 60(b)(5) based on a "shift in the legal landscape." *Becerra*, 978 F.3d at 713-15. Regarding the equities, the court remarked that an order compelling agency action "based on a legal duty that has since disappeared is a harm in and of itself." *Id.* at 717. Here, the legal duty underpinning the 2025 BiOp—NMFS' obligation as a consulting agency to give its biological opinion—has evaporated. There is no legal or even practical reason for NMFS to alter the 2025 BiOp on remand. The Court therefore should modify its order of remedy and judgment to remove the remand requirement. ECF 59, 60.

### B.      Rule 60(b)(6)

Rule 60(b)(6) also permits a court to vacate or modify its judgment when an action becomes moot after judgment. *See Hall v. Louisiana*, 884 F.3d 546, 550-51 (5th Cir. 2018). When a court has

7

the power to vacate a judgment, it also has power to modify its judgment, or vacate the judgment *in part*. *See* Fed. R. Civ. P. 60(b); *see Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 837 (5th Cir. 2023) (partial vacatur of district court judgment when underlying action became moot). In doing so, a district court is guided by similar principles to those appellate courts consider when determining whether to vacate a judgment of the district court after mootness. *See Hall*, 884 F.3d at 551. Vacatur is an equitable determination informed by considerations of fault and the public interest. *Id.* Even when those factors would counsel against vacatur, a district court may vacate its own judgment based on the equities of the case. *See id.*

Plaintiffs' claims seeking remand of the BiOp became moot after the entry of judgment. As explained above, the remedy ordered by the Court—remand, with instructions to address specific issues, by a date certain—no longer provides any effectual relief to Plaintiffs because the agency actions are now exempt from the ESA's requirements. At this point, completing the remand would be a purely academic endeavor for NMFS, with no legal consequences to Plaintiffs. *See U.S. Navy Seals 1-26 v. Biden*, 72 F.4th 666, 672 (5th Cir. 2023) (dispute moot where injunction no longer provides any relief).

The equitable considerations the Fifth Circuit concluded were applicable in *Hall*, 884 F.3d at 551—fault and the public interest—counsel in favor of modifying the judgment to set aside the remand requirement. On the question of fault, in *Hall*, the Fifth Circuit observed that, when the plaintiff's claims were mooted by the enactment of a new law before the plaintiff could appeal an adverse judgment, the enactment was not the "fault" of any defendant—even though the plaintiff sued the governor in his official capacity, and the governor signed the bill that mooted plaintiff's case into law. 884 F.3d at 553. So too, here. The remand issue became moot through no "fault" of NMFS but, rather, through the act of a separate statutory entity—the Committee—granting an

8

exemption of the actions reviewed by NMFS in the 2025 BiOp.

Furthermore, the public interest weighs in favor of modifying the Court's judgment. The Fifth Circuit has identified a list of non-exhaustive factors that bear on the public interest, not all of which are relevant in any given case: the value of judicial precedent to the legal community, concerns of federalism,[2] whether the action mooting the dispute is temporary, whether the party seeking vacatur is subject to a money judgment or injunctive relief as a result of the court's judgment. *See Freedom from Religion Found., Inc.*, 58 F.4th at 836. Of the relevant factors, all counsel in favor of modifying the judgment. NMFS is currently subject to the Court's order requiring it to complete a now-unnecessary remand by a date certain. That fact counsels in favor of removing the remand requirement. *See Hall*, 884 F.3d at 553 (noting that when a defendant is subject to injunctive relief, that fact counsels in favor of vacatur because the defendant is otherwise forced to "acquiesce in the judgment" (quotation omitted)). Moreover, the action that has mooted this case—the exemption—is not temporary but, instead, covers the entire period covered by the 2025 BiOp. Finally, the value of judicial precedent is not in issue here, because Federal Defendants are not seeking vacatur of the Court's order as a whole—only the order of remand.

### CONCLUSION

For the foregoing reasons, Federal Defendants are entitled to relief under both Federal Rule of Civil Procedure 60(b)(5)-(6). The Court should modify its judgment to remove the requirement of remand.

A proposed order is attached for the Court's review.

Dated: April 27, 2026                    Respectfully submitted,

                                         ADAM R.F. GUSTAFSON,
                                         Principal Deputy Assistant Attorney General

---

[2] Federalism concerns are not at issue in this case because there is no adjudication of the constitutionality of a state law. *Freedom from Religion Found.*, 58 F.4th at 836.

9

BRADLEY CRAIGMYLE,
Deputy Assistant Attorney General
MEREDITH L. FLAX, Deputy Section Chief
MICHAEL EITEL, Acting Assistant Section Chief

*/s/ Sara M. Warren*
SARA M. WARREN, Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Benjamin Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 598-5785
Fax: (202) 305-0275
Email: sara.warren@usdoj.gov

DAVIS A. BACKER, Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
999 18th Street, North Terrace, Suite 600
Denver, Colorado 80202
Tel: (202) 305-5469
Fax: (202) 305-0275
Email: davis.backer@usdoj.gov

**Attorneys for Federal Defendants**